UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHRISTIAN ABARCA, *et al*,

    *Plaintiffs*,

v.

KC CONSULTING GROUP, INC.,

    *Defendant*.

Civil Action No. 16-213

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Plaintiffs Christian Abarca, Nixon Arnold, Syuapa Alvarez, Reina Callejas, and Nora Rodriguez's ("Plaintiffs") unopposed motion for default judgment against Defendant KC Consulting Group, Inc. ("Defendant") under Federal Rule of Civil Procedure 55(b)(1). D.E. 18. The underlying dispute concerns Defendant's alleged violation of both the Fair Labor Standards Act, 29 U.S.C. §201 ("FLSA"), and the New Jersey State Wage and Hour Law, N.J.S.A. § 34:11-56a ("NJWHL"). The Court reviewed all submissions made in support of the motion and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is **DENIED**.

## I. FACTS[1] AND PROCEDURAL HISTORY

Plaintiffs are five former employees of Defendant, who worked at Defendant's factory and shipping facility (the "Facility") located in Union, New Jersey. Complaint ("Compl.") ¶ 22; D.E.

---

[1] The facts of this matter derive from the Complaint (D.E. 1) as well as the certifications and exhibits submitted in conjunction with Plaintiff's motion for default judgment (D.E. 18). *See Trustees of the Teamsters Pension Trust Fund of Phila & Vicinity v. Riccelli Premium Produce, Inc.*, 2011 WL 1114175, at *1 (D.N.J. Mar. 23, 2011).

1. The Facility is listed as the "Main Business Address" by Defendant in its corporate registration filing with the State of New Jersey. *Id.* ¶ 23. Each Plaintiff[2] worked daily shifts of 12 hours from 6 a.m. through 6 p.m., Monday through Friday. *Id.* ¶ 26. On any given day, approximately thirty-five to forty-five employees worked alongside Plaintiffs on the 12-hour shift, engaging in the same packaging and assembly duties. *Id.* ¶ 32. Plaintiffs therefore worked at least a 60-hour workweek. *Id.* ¶ 26. On numerous occasions, Plaintiffs were also required to work a 12-hour shift on Saturdays. *Id.* Thus, Plaintiffs sometimes worked a 72-hour workweek. *Id.*

At all relevant times through September 2015, Plaintiffs were paid $7.00 per hour. *Id.* ¶ 29. In September 2015, the hourly wage was increased to $8.00 per hour. *Id.* Plaintiffs were not paid an overtime rate for working more than 40 hours a week. *Id.* ¶ 30. Defendant did not inform Plaintiffs of their right under the FLSA and NJWHL to receive minimum wage and overtime premiums. *Id.* ¶ 31. Defendant paid Plaintiffs by check. *Id.* ¶ 34. Defendant did not list or itemize employees' hours. Defendant also did not comply with appropriate tax withholdings. *Id.*

Sometime in September or October 2015, Plaintiffs complained to Carter Wilson, Defendant's principal and officer, that Defendant was not paying them the lawful minimum wage or overtime wages. *Id.* ¶ 27, 35. By December 14, 2015, Defendants had terminated each named Plaintiff. *Id.* ¶ 36.

---

[2] Unless otherwise noted, Plaintiffs' allegations include similarly situated employees as well.

On January 12, 2016, Plaintiffs filed a Complaint against Defendant KC Consulting, Inc., Echo Molding, Inc.,[3] Carter Wilson,[4] Dieter Hekler,[5] John and Jane Does 1-10, and John Doe Corporation 1-10. D.E. 1. The Complaint set forth individual and class claims against KC Consulting for unpaid overtime and minimum wages. Plaintiffs' Motion for Default Judgment ("Pl. Brf."), Certification of David Zatuchni ("Zatuchni Cert.") ¶ 4; D.E. 18-1. Specifically, the Complaint alleges that (1) Defendant paid Plaintiffs a wage lower than the minimum wage for hours worked each week, and (2) Defendant also failed to pay Plaintiffs overtime compensation at the rate of one and one-half times their regular rate of pay for hours worked in excess of a 40-hour workweek. *Id.* Plaintiffs brought this action on behalf of themselves, and other similarly situated employees, as a collective action, seeking monetary damages and affirmative relief based on Defendant's alleged violation of the FLSA. *Id.* ¶ 5. Plaintiffs also brought this action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves, and a class of New Jersey employees, based on Defendant's alleged violation of NJWHL. *Id.* Since Plaintiffs' filing of the Complaint, twenty-four additional employees, both current and former, of Defendant have opted-in. Zatuchni Cert., Ex. B; D.E. 18-1.

Defendants did not answer, move, or otherwise respond to the Complaint. On January 1, 2017, this Court denied Plaintiffs' unopposed motion for default judgment as to KC Consulting

---

[3] Echo Molding, Inc. ("Echo") also listed the Facility as the "Main Business Address" in its corporate registration filing with the State of New Jersey. Compl. ¶ 24. Echo denied that it was a co-employer of Plaintiffs. D.E. 6. Echo and Plaintiffs settled, and the Court then administratively terminated this action as to Echo. D.E. 31-32.

[4] Carter Wilson is the principal and officer of KC Consulting, and he supervised Plaintiffs at the Facility on a daily basis. Compl. ¶ 27. Claims against Carter Wilson were discharged by bankruptcy, and Plaintiffs advised the Court that they did not intend to pursue the claims. D.E. 49. Thereafter, the Court ordered Carter Wilson dismissed from the case. D.E. 50.

[5] Dieter Hekler is a principal and officer of Echo. Compl. ¶ 16. Dieter Hekler and Plaintiffs settled, and, thereafter, the Court administratively terminated action against him. D.E. 31-32.

3

without prejudice. D.E. 28. The Court determined that, at the time, other defendants in the case were actively litigating, and, therefore, entering a default judgement would risk potentially inconsistent judgments. *Id.* On December 12, 2017, Plaintiffs' attorney sent a letter advising the Court that they did not intend to pursue claims against Carter Wilson and requesting to renew the motion for default judgment against KC Consulting Group. D.E. 49. By December 12, 2017, KC Consulting Group was the only Defendant remaining in the case. The Court reinstated Plaintiffs' motion for default judgment as to KC Consulting Group. D.E. 50.

## II. LAW AND ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 55 allows for the entry of default against a party that fails to plead or otherwise defend against claims. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, ... and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

In entering a default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction; (2) the defendants were properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). Additionally, a court must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Id.* at *2.

## B. Jurisdiction and Service

When a default judgment is sought against a party that has not filed responsive pleadings, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

### i. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this matter. "In order to establish a basis for subject matter jurisdiction in federal court, a plaintiff's claims must establish either federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.S.C. § 1332. *Gencarelli v. New Jersey Dep't of Labor & Workforce Dev.*, No. 15-3405, 2015 WL 5455867, at *1 (D.N.J. Sept. 16, 2015) (citing *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 387 (D.N.J. 1996)). Federal question jurisdiction exists for civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. 1331. "[A] claim arises under federal law if federal law creates the cause of action." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 706 (2006) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

In cases involving both federal and state claims, district courts have supplemental jurisdiction over the state claims when "they are so related to [the federal] claims . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Indeed, the state and federal claims must "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, the Court has federal question subject matter jurisdiction over the FLSA claim because it involves a federal statute. Additionally, the Court has supplemental jurisdiction over the NJWHL claim because the Complaint alleges Defendant's actions violated both statutes simultaneously based on the same core facts.

### ii. Personal Jurisdiction

The Court also has personal jurisdiction over Defendants. A federal court engages in a two-step inquiry to determine whether it may exercise personal jurisdiction. "The court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. Apr. 25, 2016) (citing *IMO Indus., Inc. v. Kierkert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998)). New Jersey's long-arm statute extends the state's jurisdictional reach as far as the Constitution permits. *Id.* at 259.

Personal jurisdiction can be based on either specific jurisdiction or general jurisdiction. Specific jurisdiction "depends on an affiliation[n] between the forum and the underlying controversy." *Walden v. Fiore*, 571 U.S. 277 n. 6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction over a defendant exists when that defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

General jurisdiction, "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit ..." *Id.* General jurisdiction is satisfied when the defendant's affiliations with the forum state are "so continuous and systematic as to render them essentially at home in the forum state." *Goodyear*, 564 U.S. at 919. For a corporate

defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Here, the Court has both specific and general personal jurisdiction over the Defendant. As to general jurisdiction, Defendant lists the Facility in Union, New Jersey as the "Main Business Address" in its corporate registration filing with the State of New Jersey. Compl. ¶ 23. Defendant's principal place of business is, therefore, New Jersey. As to specific jurisdiction, the entire Complaint revolves around activities in New Jersey. Thus, personal jurisdiction is proper here.

### iii. Sufficiency of Proof of Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Phila & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). As a corporation, Defendant may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). On January 21, 2016, a process server served Carter Wilson on behalf of KC Consulting Inc. Zatuchni Cert., Ex. C; D.E. 18-1. As noted above, Carter Wilson is the principal and officer of KC Consulting Inc. Therefore, the Court finds that service of the summons and complaint was proper on KC Consulting Inc.

### C. Sufficiency of Plaintiff's Causes of Action

Next, the Court must determine whether the Complaint states a proper cause of action. The Court accepts all well-pleaded factual allegations in the pleadings as true, except as to damages.

*Chanel, Inc.*, 558 F. Supp. 2d at 535-36. Plaintiffs bring this action based on alleged violations of the FLSA and NJWHL.

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). Under the FLSA, employers must pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and must pay one and a one-half times the employer's "regular rate" of pay for each hour worked in excess of 40 hours a week. 29 U.S.C. § 207(a)(1). Employers who violate these provisions are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or the unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. §216(b). To recover overtime compensation under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis*, 765 F.3d at 241 (quoting *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)).

The NJWHL mirrors its federal counterpart. *Nieves v. Top Notch Granite & Marble LLC*, 2011 WL 2937352, at *3 (D.N.J. 2011) (citing *Crisostomo v. Exclusive Detailing, Inc.*, 2010 WL 2640183, at *5 (D.N.J. June 28, 2010) (finding that the NJWHL is analogous to the FLSA and therefore "interpretations construing FLSA are applicable")). Indeed, the NJWHL requires employers to pay their employees at least the federal minimum hourly wage rate set by the FLSA. N.J.S.A. § 34:11-56a. A plaintiff, however, cannot recover under both the FLSA and NJWHL, since recovery under the NJWHL would duplicate recovery under the FLSA. *Nieves*, 2011 WL 2937352, at *3.

Under the FLSA, plaintiffs may seek to sue on behalf of themselves and other employees similarly situated pursuant to Section 216(b). 29 U.S.C. § 216(b). However, unlike class certification pursuant to Federal Rule of Civil Procedure 23, FLSA "conditional certification" does not produce a class with an independent legal status, or join additional parties to the action. *Bobryk v. Durand Glass Manufacturing Co., Inc.*, 50 F. Supp. 3d 637, 641 (D.N.J. Sept. 29, 2014) (citing *Genesis Healthcare Corp.*, 569 U.S. at 74). The Third Circuit has outlined a two-step process for deciding whether an action may proceed as a FLSA collective action. *See Camesi v. University of Pittsburgh Medical Center*, 729 F.3d 239, 243 (3d Cir. 2013).

First, "[a]pplying a 'fairly lenient standard' ... the court makes a preliminary determination as to whether the named plaintiffs have made a 'modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Id.* "If the plaintiffs have satisfied their burden, the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Id.* Rather than opting-out as is done in a traditional class action lawsuit, the FLSA requires that potential class members opt-in through written consent filed with the Court. *Manning v. Gold Belt Falcon, LLC*, 817 F. Supp. 2d 451, 452 (D.N.J. 2011). The second stage occurs "with the benefit of discovery," where the court "makes a conclusive determination as to whether each plaintiff who has opted-in to the collective action is in fact similarly situated to the named plaintiff." *Camesi*, 729 F.3d at 243.

Under a NJWHL claim, Federal Rule of Civil Procedure 23 permits "[o]ne or more members of a class [to] sue ... as representative parties on behalf of all members" of the class. Fed. R. Civ. P. 23(a). Rule 23 "sets forth a two-pronged standard for class certification." *Franco*

*v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121, 129 (D.N.J. 2013). First, the party seeking class certification must establish the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n. 6 (3d Cir. 2008).

Where the plaintiff satisfies all four prerequisites under Rule 23(a), Rule 23(b) sets forth three types of classes that may be certified. Pursuant to Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide*, 552 F.3d at 307.

The Complaint requests five separate claims for relief. Counts One, Two, Three, and Four are categorized as collective and class claims. Compl. ¶¶ 54-72. In Counts One and Two, Plaintiffs allege they were not paid the minimum wage for all of the hours they worked or overtime compensation for all hours they worked in excess of a 40-hour workweek. *Id.* ¶¶ 37-39.

As an initial matter, the Plaintiffs have made a modest factual showing that the other employees identified in their Complaint are similarly situated. Plaintiffs indicate that they, and the similarly situated employees, worked at the same Facility for Defendant, for the same number of hours, and received the same wages in compensation. *Id.* ¶¶ 26-30. Further, since the filing of the initial Complaint, twenty-four current or former employees have "opted-in" through written

consent forms. Zatuchni Cert., Ex. C; D.E. 18-1. Because this action has not proceeded to a discovery phase, the Court only addresses the first stage of FLSA collective action here.

Next, Plaintiffs' allegations are sufficient to state a claim for FLSA overtime and minimum wage violations. First, the Complaint alleges that Defendant employed Plaintiffs for a workweek in excess of 40-hours but did not compensate them at a rate of one and one-half times the regular rate at which they were employed in violation of 29 U.S.C. § 207(a)(1). *Id.* ¶ 55. Second, the Complaint alleges that Defendant failed to keep accurate records of the hours that Plaintiffs worked in violation of 29 U.S.C. § 211(c). *Id.* ¶ 40(c). Finally, the Complaint alleges that Defendant failed to pay Plaintiff wages at the rate of not less than $7.25 an hour in violation of 29 U.S.C. § 206(a)(1)(C). *Id.* ¶¶ 29, 60. Therefore, Counts One and Two allege legitimate causes of action under the FLSA.

In Counts Three and Four, Plaintiffs allege violations of the NJWHL overtime and minimum wage provisions. Plaintiffs bring these claims pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of themselves and a class of persons consisting of "all persons who currently work or have worked for Defendants as hourly workers in assembling and packaging goods at the Facility, between January 12, 2010 and the date of the final judgment in this matter (the "Class")." *Id.* ¶ 45.

As an initial matter, Plaintiffs appear to satisfy the requirements of Rule 23(a). The Complaint demonstrates that the proposed class is so numerous that joinder of all members is impracticable. It states that "the size of the Class is at least 40 individuals and, given the turnover rates of Defendant's employees is likely to be well over 100." *Id.* ¶ 47. The Complaint also provides questions of law or fact common to the proposed class that predominate over any questions affecting them individually. *Id.* ¶ 49. Examples of these questions include (1) whether

11

Defendant violated N.J.S.A. § 34:11-56(a), (2) whether Defendant failed to pay Plaintiffs and the proposed class lawful minimum wages, and (3) whether Defendants failed to pay Plaintiffs and the proposed class for all hours worked in excess of 40 hours per workweek. *Id.* The Complaint further shows that Plaintiffs' claims are typical of the claims of other members of the proposed class. It alleges "Plaintiffs and the Class members were all workers who cleaned stores for Defendants' clients. Plaintiffs' claims arise out of the same uniform course of conduct by Defendants, and are based on the same legal theories, as the claims of other Class members." *Id.* ¶ 50.[6] Finally, the Complaint establishes that Plaintiffs will fairly and adequately protect the interests of the proposed class. The Complaint notes that Plaintiffs' interests are in unison with the interests of the other proposed class members. In addition, the Plaintiffs have retained counsel "competent and experienced in complex class actions and employment litigation." *Id.* ¶ 51. Thus, Plaintiffs have satisfied the requirements of Rule 23(a).

Additionally, Plaintiffs satisfy the requirement of Rule 23(b)(3). Plaintiffs and the proposed class members are so closely intertwined that questions of law or fact common to the proposed class members predominate over any questions affecting only individual members. The Complaint reveals that the Plaintiff and proposed class members shared the same employer, worked comparable hours, and suffered the same injuries. Further, a class action is superior to other methods of adjudicating this controversy because individual litigation would be expensive and burdensome on individual plaintiffs who may not otherwise have sufficient resources in light of potential individual recovery amounts. Class litigation also prevents the possibility of duplicative litigation that might result in inconsistent judgments. Therefore, the Court accepts for this motion's purpose Plaintiffs' proposed class (hereinafter "Class").

---

[6] As noted above, this action was originally a multi-defendant lawsuit.

Here, Plaintiffs allege that Defendant employed Plaintiffs and the Class for workweeks in excess of 40-hours and then willfully failed to compensate them at the prescribed overtime rate in violation of N.J.S.A. § 34:11-56a4. *Id.* ¶ 64. Plaintiff also allege that Defendant failed to pay Plaintiffs and the Class the minimum wage per hour in violation of the requirements of N.J.S.A. § 34:11-56a4. *Id.* ¶ 69. Therefore, Counts Three and Four allege a legitimate cause of action for failure to pay the overtime and minimum hourly wages under the NJWHL.

Finally, the Complaint categorizes Count Five as an individual claim. Count Five alleges that Defendant unlawfully terminated each of the named Plaintiffs in retaliation for protected conduct in violation of the FLSA, 29 U.S.C. § 215(a)(3). Compl. ¶ 74. Under the FLSA, it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or cause to be instituted any proceeding under or related to [the FLSA] . . . ." 29 U.S.C. § 215(a)(3). An employee bears the burden of establishing a *prima facie* case of retaliation. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (noting that the Supreme Court's test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is the starting point for analyzing a retaliation claim). The employee must first establish three elements for a *prima facie* case: (1) the employee engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *Id.* If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce evidence of a legitimate, non-retaliatory reason for the adverse employment action. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

As to the first element, an internal complaint qualifies as protected activity under the FLSA. The United States Supreme Court has held that a "verbal complaint may serve as a basis for a

FLSA retaliation claim where it is 'sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection.'" *Ghobrial v. Pak Mfg., Inc.*, No. CIV.A. 11-2023, 2012 WL 893079, at *4 (D.N.J. Mar. 13, 2012) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).[7] Courts within this Circuit have found that, post *Kastsen*, internal complaints qualify as protected activity. *Ghobrial*, 2012 WL 893079, at *5 (finding that in light of *Kastsen*, the plaintiff's oral complaint to his supervisor that he was misclassified as a wage employee qualified as protected activity under the FLSA); *Shakib v. Back Bay Rest. Grp., Inc.*, No. 10CV4564 DMC JAD, 2011 WL 4594654, at *7 (D.N.J. Sept. 30, 2011) (holding that pursuant to *Kasten*, the plaintiff's numerous complaints to management concerning wages qualified as protected activity under the FLSA).

As to the second element, a materially adverse action is any action taken by the employer that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Finally, as to the third element, the Third Circuit has articulated two main factors that establish a causal link satisfying a *prima facie* case of retaliation: (1) timing or (2) evidence of ongoing antagonism. *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).

---

[7] In *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 224 (3d Cir. 2010), the Third Circuit noted that it had not yet decided whether an internal complaint qualified as protected activity under the FLSA. The Third Circuit stated that there was a circuit split on the issue, with the majority view being that that internal complaints qualify as protected activity under the FLSA. *Id.* n 8 ("The First, Fifth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have held that internal complaints are protected under the FLSA."). Further, the Third Circuit noted that it had cited "the majority approach with approval in dicta." *Id.* (citing *Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir.1987)). Yet, *Edwards* precedes the holding of the Court in *Kasten*.

Here, Plaintiffs have sufficiently alleged a *prima facie* claim of retaliation in violation of the FLSA. Plaintiffs went together to their manager and complained that they were not receiving the lawful minimum wage or overtime wages. This internal complaint qualifies as protected employee activity. Thereafter, Defendant "immediately" terminated each named Plaintiff. Thus, Defendant took adverse action contemporaneously with Plaintiffs' protected activity, which sufficiently establishes the necessary causal link. Therefore, the burden shifts to Defendant to produce evidence of a legitimate, non-retaliatory reason for the terminations. Yet, Defendant has offered no explanation. Therefore, Count Five establishes a legitimate cause of action for retaliation under the FLSA.

Although Plaintiffs allege facts sufficient to sustain a class and collective action, the Court will deny Plaintiffs' motion for default judgment. Plaintiffs moved for default judgment on behalf of themselves and other members of the proposed FLSA collective and NJWHL class action. Entering judgment gives the Court pause because in a Rule 23(b)(3) class action, class members must opt-out or they are bound by the final judgment. Thus, a court typically directs "to class members the best notice that is practicable under the circumstances," which includes adequate notice of the case and their right to request exclusion. Fed. R. Civ. P. 23. Here, Plaintiffs have not sent notice to the proposed class members, and, therefore, the Court is concerned that entering a default judgment may bind persons whose rights are at issue, without the protection of their first receiving proper notice. Similarly, as to the collective action, Plaintiffs indicate that several persons have "opted-in." Yet, no notice of the collective action has been sent to potential plaintiffs, so the Court is equally concerned that others who may wish to opt-in have not been given the

proper opportunity. Indeed, no conditional certification of the FLSA collective action has been sought much less final certification.[8]

Thus, with the exception of Count Five, the Court declines to grant the named Plaintiffs default judgment as to their claims at this juncture. Because it was not raised by Plaintiffs, the Court does not know how Plaintiffs wish to proceed. Plaintiffs, for example, may decide to forego the collective and class action to the extent permissible. The Court notes that however Plaintiffs decide to proceed, they must provide the Court with legal authority to adequately support their position. The foregoing reservations do not apply to Count Five, the retaliation claim, because it does not implicate either a collective or class action.

### D. Damages

Although the Court denies default judgment on Counts One through Four, the Court analyzes Plaintiffs' damages claim for Plaintiffs' benefit in resubmitting any future motion. While the Court "should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's . . . allegations relating to the amount of damages." *Chanel, Inc*, F. Supp. 2d at 535. "If the damages are not for a 'sum certain or for a sum which can by computation be made certain,' Fed.R.Civ.P. 55(b)(1), the 'court may conduct such hearings or order such references as it deems necessary and proper.'" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

Plaintiffs base their claim for damages on their total loss in minimum wages (calculated as back pay under the FLSA and NJWHL plus liquidated damages under the FLSA) and their total loss in overtime wages (calculated as back pay under the FLSA and NJWHL plus liquidated

---

[8] In *Troncone v. Velahos*, No. CIV. 10-2961, 2011 WL 3236219, at *8 n. 8 (D.N.J. July 28, 2011), Judge Kugler elaborated on the issues present when a plaintiff makes a premature motion for collective certification in a FLSA case. *See Troncone*, 2011 WL 3236219, at *3-4, *8 n. 8.

damages under the FLSA). Zatuchni Cert. ¶¶ 19-21, 25-28. Plaintiffs state that "[t]he complete records concerning the number of hours worked by Plaintiffs and the FLSA Collective, as well as the compensation they received in workweeks in which excess hours were worked, are in the exclusive possession and control of the Defendants[.]" Compl. ¶ 56. Because Defendant has failed to respond, Plaintiffs have been unable to secure the records regarding their wages and hours worked during the relevant time period.

An employee bringing a FLSA claim typically bears the burden of proving the amounts due. *Rosano v. Twp. of Teaneck*, 754 F.3d 177, 188 (3d Cir. 2014). "Such a burden becomes difficult to meet, however, where an employer has not maintained its records." *Id.* (citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1297 (3d Cir.1991)). In this situation, the:

> burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

*Martin*, 949 F.2d at 1297 (quoting *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687-88 (1946), *superseded by statute*, Portal–to–Portal Act of 1947, 29 U.S.C. §§ 251–262). Indeed, "[o]nce an employee establishes that the employer's records are inadequate, the employee need only introduce enough evidence to support a reasonable inference of hours worked." *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984).

Here, Plaintiffs' attorney provided separate calculations for each Plaintiff's total loss in minimum and overtime wages. Zatuchni Cert. ¶¶ 11-28. However, there are issues with the calculations. First, the Complaint provided that Plaintiffs worked "at least 60 hours per week," but "on numerous occasions" they were "required to work a 12-hour shift on a Saturday as well, resulting in a 72-hour week." Compl. ¶ 26. Thus, each Plaintiff worked between 60 to 72 hours

per week. Yet, the damages calculations appear to suggest that each Plaintiff worked 72 hours for every week of the relevant time period. Because the Complaint contradicts this assertion, the Court finds that Plaintiffs do not demonstrate a good faith basis to only use 72-hour workweeks to calculate the amounts owed. The Court is aware that Plaintiffs do not have access to the precise numbers of hours worked each week. However, based on the 60-72 hour range provided, the Court believes that Plaintiffs can provide a more reasonable estimate of the hours they worked over the relevant time period.

Second, several calculation errors need to be addressed. As part of the calculations for unpaid minimum wages, the 2013 calculation for Lianna Diaz's unpaid minimum wages lists the total amount as $900.00. Zatuchni Cert. ¶ 18q. However, based on the equation given the amount should equal $612.00. The Court is unsure whether the error is with the total sum or with the number of weeks Ms. Diaz worked in 2013 (the weeks are listed as 34 weeks, but if it had been 50 weeks, like several other Plaintiffs, then the total would be accurate). The rest of the individual equations appear accurate. The Court also noticed a minor discrepancy between the total damages for lost minimum wages. Plaintiffs calculated $164,106, *Id.* ¶ 19, but based on the numbers provided, the Court calculated the total as $164,642. For the liquidated damages, the Court's and Plaintiffs' calculation of $41,994 matched.

There are other minor discrepancies. For the total damages in lost overtime wages, Plaintiffs calculated $399,638. *Id.* ¶ 25. The Court calculated $399,367. Also, here, for the liquidated damages calculation, Plaintiffs calculated $310,760, while the Court calculated $310,217. When added together for total statutory damages claim, Plaintiffs calculated $917,044, while the Court calculated $916,230. Plaintiffs must address these discrepancies in their calculations in order for the Court to draw a reasonable inference as to damages.

Further, Plaintiffs do not separate the damage calculations for Count Five (the retaliation claim) from the damage calculations for the class and collective action counts. The damages are calculated for all counts collectively. Therefore, the aforementioned errors in Plaintiffs' damage calculations also apply to Count Five, to the extent Plaintiffs are seeking damages under this count. Thus, although the Court will not grant judgement as to Counts One through Four for the reasons stated above, the Court also finds that adequate proof of damages is lacking as to all counts.

### E. Default Judgment Factors

Before entering a default judgment, district courts must determine the appropriateness of default judgment by weighing (1) the prejudice suffered by the party seeking default judgment; (2) whether the party subject to the default has a meritorious defense; and (3) the culpability of the party subject to default. *Jinisha*, 2015 WL 4508413, at *2.

Here, all three factors weigh in favor of the Court entering a default judgment. Plaintiffs would not be able to recover damages, and would be unfairly prejudiced if no default judgment is entered. *Days Inn Worldwide, Inc. v. Tulsipooja Hosp., LLC*, No. 15-5576, 2016 WL 2605989, at *3 (D.N.J. May 6, 2016); *Jinisha*, 2015 WL 4508413, at *2. Next, considering that Defendant has not responded to this matter, "Defendant has put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *3 (D.N.J. Jan. 22, 2015). Lastly, Defendant's failure to answer, without providing any reasonable explanation, permits the court to draw an inference of culpability. *Int'l Union of Painters v. Andrews Window Servs. LLC*, No. 15-3583, 2016 WL 3234516, at *3 (D.N.J. June 7, 2016) (citing *Slover v. Live Universe, Inc.*, No. 08-2645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009)). Although the Court is denying default judgment for the

reasons stated above, the Court notes that these three factors would otherwise weigh in favor of granting the motion.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment (D.E. 18) is **DENIED**.[9] Plaintiffs will have thirty (30) days to clarify how to they intend to proceed as to the collective and class action in light of their seeking a default judgement. An appropriate Order accompanies this Opinion.

Dated: May 14, 2018

_____
John Michael Vazquez, U.S.D.J.

---

[9] Plaintiffs sufficiently prove liability for Count Five, a claim for retaliation. However, due to the noted issues with Plaintiffs' calculations of damages, the Court is denying default judgment as to Count Five as well.